# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

---

No. 92-3122

---

UNITED STATES

Plaintiff-Appellee,

VERSUS

MICKEY R. BROWN and IVON REVERE,

Defendants-Appellants.

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

(February 25, 1993)

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DEMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The defendants Brown and Revere ("B & R") appeal their sentences as imposed by the district court. Their contentions on appeal stem primarily from the application of U.S.S.G. § 2D1.4, which mandates that the base offense level in drug transactions be calculated using the amount of drug "weight under negotiation." We find that the district court properly applied U.S.S.G. § 2D1.4 and properly sentenced both defendants free of clear error. Therefore, the defendants' sentences are in all respects AFFIRMED.

## BACKGROUND

The defendants' attempted to purchase 750 pounds of marijuana. During the course of numerous negotiations between B & R and a government informant, John Sorrell,[1] the defendants attempted to purchase 750 pounds of marijuana. Unbeknownst to the defendants, Sorrell and the government were surreptitiously recording all of their conversations.

Early negotiations between the two sides were stonewalled because the defendants did not have sufficient money to close the deal. Sorrell wanted B & R to "put down" $30,000 up front in order to secure the deal. Apparently, prior to Sorrell's ascendance to informant status he had never required a down payment. B & R repeatedly pleaded with Sorrell to trust them stating that "they were good for it."

During the course of these repeated attempts to consummate the deal, B & R asserted that they had only about $5,000 and could not afford to put money up front. The parties discussed numerous alternatives to the down payment sought by Sorrell. In the interim, Sorrell reduced his demand to $20,000, but then remained steadfast. Additionally, there was a suggestion made in recorded conversations that one of them would stay as a "hostage" for a short period after delivery, while the other made a few

---

[1] The defendants had purchased marijuana from Sorrell in the past. Sorrell was working for the government in connection with a deal for lenient treatment as a result of an earlier arrest.

quick deals in order to drum up the needed down payment.

A few days prior to their arrest, the defendants were informed that they were going to receive 750 pounds out of a 1500 pound shipment. In response to Brown's question "how much does it look like you gonna let us hold?" Sorrell informed them that they would receive 750 pounds. Brown then replied "god damn . . . alright."

On the day of the arrest, Sorrell telephoned Revere and stated that the delivery would take place in approximately two hours. Sorrell requested that Revere have the money ready. Revere replied, "I'll have everything put [sic] I can put together." Approximately three hours later, Sorrell and an undercover agent delivered 610 pounds of marijuana to Revere's residence.

Revere acknowledged the presence of the marijuana and stated that Brown had gone out to pull together the money for the down payment. Revere in fact stated that they could raise $200,000 within 24 hours. Revere was then arrested in his residence. Subsequently, upon his return, Brown was arrested about a half mile away from Revere's residence as he turned into the driveway.

Both defendants pleaded guilty to attempted possession with intent to distribute marijuana. This appeal concerns the presentence report and the resulting sentences imposed by the district court. The defendants were sentenced in accord with U.S.S.G. 2D1.4 comment n.1, which allows sentences for attempts and conspiracies to include the "weight under negotiation." Accordingly, the court sentenced the defendants based on the amount of 750 pounds.

Further, the court added an upward adjustment of 2 points to Brown's presentence computation under Section 2D1.1(b)(1), because he had two guns, one of them was loaded and in the glove compartment of his truck at the time of his arrest. Although, Revere had weapons in his house, the court did not make a similar adjustment in his case.

Revere was also given a 2 point negative adjustment for his perceived subordinate role to Brown. In the end, Revere had only a 22 point presentence report computation, while Brown ended up with 26 points. Both defendants appeal.

## DISCUSSION

The issues raised on appeal are as follows: (i) did the trial court properly apply U.S.S.G. § 2D1.4 by using 750 pounds of marijuana to calculate the base offense level; and (ii) whether the district court properly calculated and imposed disparate sentences upon Brown and Revere?

The trial court properly applied U.S.S.G. § 2D1.4 in this case. The defendants negotiated and transacted to possess 750 pounds of marijuana; thus, the district court was correct in utilizing 750 pounds to calculate the defendants' base offense level. Further, the court's application of the sentencing guidelines was not clearly erroneous.

*i. U.S.S.G. § 2D1.4 Comment n.1*

Succinctly stated, the issue herein reduces to whether the defendants may be sentenced for attempting to possess 750 pounds based on the following provision:

If a defendant is convicted of an offense involving negotiation to traffic in a        controlled substance, the *weight*

2

*under negotiation* in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing

U.S.S.G. § 2D1.4 comment n.1 (emphasis added).

The defendants rely on the fact that they did not have sufficient capital to consummate the transaction. They argue that the $30,000 down payment was an essential element of the bargain they had struck with Sorrell. As a result, they argue that because they possessed only $5,000 at the time of the deal that they were incapable of possessing 750 pounds of marijuana.

Applying the facts of the case, it seems clear that the defendants were involved in repeated negotiations aimed at securing possession of a large quantity of marijuana. During the course of the negotiations they were told that they would receive 750 pounds. The defendants were not perplexed, swayed, or hindered by that knowledge. In fact, they repeatedly attempted to negotiate alternatives to the large down payment. Surely, they intended to possess the marijuana - if they could get their hands on it. Information used in sentencing must have some indicia of reliability. *See United States v. Kinder*, 946 F.2d 362, 366 (5th Cir. 1991), *cert. denied*, 112 S. Ct. 1677 (1992). The facts of this case are clear from the taped conversations. In the current context we really have a mixed question of fact and law. The clearly erroneous standard is the benchmark to be used when considering the district court's factual findings with regard to drug quantity. *See United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991). Indeed, the district court was not clearly erroneous in utilizing 750 pounds of marijuana to calculate the base offense.

*ii. Application of the Sentencing Guidelines to Brown and Revere.*

The district court explained that it was starting from a 26 point rating based on the attempted possession of 750 pounds. Then in Brown's case it: (i) added 2 points for possession of two firearms at the time of his arrest, one a loaded .45 caliber automatic; and (ii) deducted 2 points for acceptance of responsibility (ie. pleading guilty). This resulted in a 26 point final rating for Brown. In Revere's case, he too started from a 26 base point rating and then: (i) deducted 2 points for his subordinate role; and (ii) deducted two points for his acceptance of responsibility.

Brown contends that it is clear error for the trial court to have added two points to his presentence report for gun possession and not do the same for Revere. The trial court articulated its reasoning that the guns owned by Revere were in his house and not clearly associated with his drug activity. On the other hand, Brown had a loaded automatic pistol in the glove compartment of his truck at the time of his arrest. There is undoubtedly a difference between each of the two defendants' situations, and it was well within the discretion of the trial court to treat them accordingly.

The district court's decision to apply U.S.S.G. § 2D1.1(b)(1) is regarded as a factual determination, which we review only for clear error. *See United States v. Devine*, 934 F.2d 1325, 1339 (5th Cir. 1991), *cert. denied*, 112 S. Ct. 954 (1992).

The commentary to section 2D1.1(b)(1) suggests that an enhanced sentence under the section is in order unless "it is clearly improbable that the weapon was connected with the offense." In this case, it was within the ambit of the district court's discretion to enhance Brown's sentence because of loaded revolver in his glove compartment, while at the same time declining to enhance Revere's sentence for weapons in his household.

## CONCLUSION

The sentences were reasonably calculated and not clearly erroneous. The underlying facts support a conclusion that not only did the defendants intend to possess 750 pounds of marijuana, but had also secured viable avenues of completing the crime, despite insufficient funds for the down payment. The disparate sentences received by the defendants were rationally and sufficiently explained. The case is in all respects AFFIRMED.